# G. W. WOLF, FOR USE, v. W. H. FERGUSON.

APPEAL BY S. C. HOLLAR FROM THE COURT OF COMMON
PLEAS OF FRANKLIN COUNTY.

Argued June 4, 1889—Decided June 28, 1889.
[To be reported.]

(a) Britton held a judgment against Wolf, which was a lien on Wolf's
own land and also on Wolf's legal title to certain land which he had
sold to Ferguson by a contract calling for a deed clear of incumbrances.
There was unpaid, on said contract, purchase money to the extent of
$1,000.25.

(b) Wolf made a deed to Ferguson in execution of his contract, receiving
in settlement of the purchase money $200.25 in cash, and Ferguson's
judgment for $800. Wolf assigned this judgment to Hollar in part
payment of a certain judgment indebtedness due from Wolf to Hollar,
subsequent in lien to Britton's judgment. Hollar knew the $800 judg-
ment was for purchase money.

(c) Wolf's own land was afterwards sold by the sheriff to Hollar. The
proceeds were more than enough to pay Britton, but the sheriff made a
special return that Hollar was entitled to the whole proceeds of sale,
ignoring Britton's judgment, although it appeared in the list of liens
attached to the return. The record did not show that this return was
read in court, but the sale was confirmed.

(d) Hollar received a deed from the sheriff and retained the entire pro-
ceeds of sale, less costs. The land purchased by Ferguson was then
sold by the sheriff under the $800 purchase money judgment held by
Hollar, and the proceeds were brought into court for distribution.
Britton, Hollar and subsequent lien creditors claimed payment out of
the fund, which was insufficient to pay all.

1. By the sheriff's sale of Wolf's land, Britton's judgment was paid as to
subsequent lien creditors of Ferguson other than Hollar, the Wolf fund
being the one primarily liable in equity, and Ferguson's land sustaining
the relation of surety for Wolf. If, therefore, Britton be paid out of
the Ferguson fund, the latter's creditors are entitled to subrogation
against the Wolf fund.

2. The auditor having awarded Britton payment out of the Ferguson
fund, deducting the amount so awarded from Hollar's $800 judgment,
this award is sustained, under the doctrine of marshaling assets, as
simply subrogating Ferguson's judgment creditors to Britton's right
against the Wolf fund, Britton's proportion of which was wrongfully in
Hollar's hands.

3. On an appeal from a decree of distribution, made upon an auditor's

report, an assignment of error alleging in general terms that the court erred in confirming the report of the auditor, without stating in what respect or for what reason it erred, is too vague and unsatisfactory to be considered by the Supreme Court.

(*a*) In passing upon exceptions to an auditor's report, the court below, after finding additional facts, confirmed the report, allowing the exceptant fourteen days in which to move for a re-argument or reference back. Without making such motion the exceptant appealed, specifying that the court erred in going outside the report and the testimony, and making up a report without legal evidence.

4. The going outside the report was not error, in the absence of anything to show that the court went outside the evidence, and as to this the specification was too vague, in that it did not state what facts the court found without evidence. Moreover, as the appellant did not move for a re-argument or reference back, little weight can be given in the Supreme Court to his complaint of the findings by the court below.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 15 May Term 1889, Sup. Ct.; court below, No. 47 December Term 1887, E. D., C. P.

On October 22, 1887, the sheriff of Franklin county, by virtue of two writs of execution in his hands, sold certain parcels of real estate belonging to William H. Ferguson, and subsequently, to the number and term of the court below, above mentioned, paid into said court the net proceeds of the sales, aggregating $1,679. On December 20, 1887, *Mr. C. M. Duncan* was appointed auditor to make distribution of the funds thus raised.

On July 28, 1888, the auditor filed his report, stating his findings, conclusions and distribution as follows:

FINDINGS OF FACT.

1. That on August 4, 1883, George Wolf sold to Wm. H. Ferguson, by articles of agreement under seal, a certain tract of land in Amberson Valley of 186 acres and 76 perches, for the sum of $3,014.50, Ferguson at the time paying $50 on the agreement. He took possession in fall of 1883 by entering upon the farm and plowing and moving a tenant upon it before March 28, 1884.

2. That on March 28, 1884, an amicable scire facias to revive the lien of judgment No. 98 December Term 1878, Com-

Auditor's Report.

mon Pleas of Franklin Co., W. W. Britton, guardian, v. George Wolf, was entered, and judgment was thus revived to No. 136 April Term 1884, for $231.65, on March 28, 1884.

3. At the date of the revival of the above judgment, Britton, guardian, v. Geo. Wolf, No. 136 April Term 1884, there was a large portion, $1,500, of the purchase money, far exceeding the amount of said judgment No. 136 April Term 1884, unpaid from the sale of the farm by George Wolf to Wm. H. Ferguson.

4. That on May 10, 1886, Wolf made and delivered a deed for the farm to Wm. H. Ferguson and took from him a judgment note for the sum of $800, the amount of the unpaid purchase money, the balance, and had the same entered of record in the Common Pleas of Franklin Co.

5. That the judgment for balance of purchase money was to No. 74 September Term 1886, Wolf v. Wm. H. Ferguson, for said sum of $800, and was on the day it was given assigned by George Wolf to Samuel C. Hollar, now the use plaintiff in said judgment.

6. That, at the time Samuel C. Hollar took an assignment of this $800 judgment, he was a judgment creditor of George Wolf's to a large extent, about $5,000, embracing three or four different judgments that he gave and made satisfaction of, and on other judgments he held against Wolf, for the price and in payment of this $800 judgment against Ferguson, preferring this security to those he held; preferring Ferguson to Wolf as paymaster. That the judgments upon which credits were made for the price and consideration of the assignment of the $800 judgments were subsequent to the Britton judgment.

7. That Samuel C. Hollar, the assignee and use plaintiff of judgment No. 74 September Term 1886, Wolf v. Ferguson, at the time the deed passed from Wolf to Ferguson, was a deeply interested lien creditor of George Wolf, watched with equal vigilance the actions of Wolf and Ferguson, so that the latter might not pay over any of the purchase money to Wolf; even warned him, Ferguson, by letter and otherwise not to do so, nor to close the purchase in his absence, as "he (Ferguson) could only get a clear title to the land from him."

8. That at the time, May 10, 1886, of the taking of the judgment Wolf v. Ferguson and the assignment of the same by Wolf to Hollar, Ferguson did not know at all of the existence

of the judgment of W. W. Britton, guardian, v. George Wolf. That he did not, though present at time of the transfer and assignment of the $800 judgment by Wolf to Hollar, entreat Mr. Hollar to take the assignment; he (Hollar) sought and wanted the assignment and took it independent of anything Ferguson said or did on that day or any time previously. On the contrary, Samuel C. Hollar, if he did not know of the existence of the Britton judgment, No. 136 April Term 1884, knew that he could not be injured by taking an assignment of the $800 Ferguson judgment, as he would be in no worse position by doing so.

9. That at the time of the revival of the Britton v. Wolf judgment No. 98 December Term 1878, the same had lost its lien. That it was revived by amicable scire facias by and between Wolf and Britton without any notice to W. H. Ferguson, terre-tenant.

10. That Samuel C. Hollar, at the time he took the transfer and assignment of the $800 Wolf judgment v. Ferguson, knew that the same was given for purchase money of real estate sold to Ferguson.

## CONCLUSIONS OF LAW.

1. That the judgment of W. W. Britton, guardian, v. George Wolf, No. 136 April Term 1884, when revived and entered did not become a lien on the equitable title of Wm. H. Ferguson in the farm purchased by articles of agreement on August 4, 1883, from Wolf; but the same did become a lien on the legal title of Wolf to the land, to the extent of the unpaid purchase money, for the amount of the Britton judgment. " A judgment against a vendor, obtained after the execution of articles, binds to the extent of the unpaid purchase money." Chahoon v. Hollenback, 16 S. & R. 431; Vierheller's App., 24 Pa. 107; Siter's App., 26 Pa. 178; Crouse's App., 28 Pa. 139; 1 Tricket on Liens, 262.

2. That the amount of the Britton, guardian, v. George Wolf judgment was no part of the purchase money for the farm sold by Wolf to Ferguson, and the same must be defalked from the $800 judgment No. 74 September Term 1886, Wolf v. Ferguson. That is, the Britton judgment to be paid in full out of and from part of said $800 judgment and the balance to Wolf's assignee; and the fund is thus accordingly distributed.

3. That Wm. H. Ferguson not having any knowledge of the existence of the Britton judgment, and as he did in no manner by any words or acts induce or persuade Samuel C. Hollar to take a transfer and assignment of the Wolf v. Ferguson judgment, but Hollar of his own motion requested and sought to have an assignment of said judgment made to him for his own benefit and advantage and may have known of the existence himself of the said Britton judgment, the doctrine of estoppel skilfully and ingenuously set up by counsel of Hollar is not applicable nor of any avail.

Amount of funds in the hands of the Sheriff, J. S. Mowrey, arising from the sale of the real estate of Wm. H. Ferguson :

From tract No. 1, amounting to  .   .   .   $   260.00
"       "   No. 2,       "         .   .   .   1,300.00
"       "   No. 3,       "    .   .   .   .       119.00
                                                    _____
Total,    .   .   .   .   .   .   .   $1,679.00

The claimants of the funds are all lien creditors. The chief contention is by and between these lien creditors, and arises mainly about the funds realized from the sale of tract No. 2, which consists of a farm located in Amberson valley, and sold by George Wolf to Wm. H. Ferguson, the defendant, by articles of agreement dated August 4, 1883, and a deed signed and delivered May 10, 1886.

—The auditor then ascertained the net amount of the fund for distribution at $1,579.03, and of this amount he distributed to the judgment of W. W. Britton, guardian, against George Wolf, $282.25, and costs ; to the judgment of George Wolf, for use of Samuel C. Hollar, against Wm. H. Ferguson, $535.38, and other sums to other judgment creditors.

Exceptions filed to the auditor's findings of fact and conclusions of law by Samuel C. Hollar having been argued, the court, ROWE, P. J., on October 23, 1888, filed the following opinion :

1. On October 22, 1887, the sheriff, on two writs of execution in his hands, sold the lands of Wm. H. Ferguson, namely :

No. 1. House and lot in Dry Run, for $260.

No. 2. Farm bought of George Wolf, for $1300.

No. 3. Tract of timber land, for $119.

Ferguson bought the house and lot in Dry Run in 1882 or

1883 ; the title to the timber lands vested in him in 1877 ; he bought the farm in Amberson's valley from George Wolf by articles dated August 4, 1883. The agreement with Wolf called for a deed in fee simple clear of all incumbrances on April 1, 1885, for $3,014.50, payable $50 down; $1,400 on April 1, 1884, $500 on April 1, 1885, " and so on till paid ; " the payments of said several sums of money to be a condition precedent to the execution of the deed ; possession to be given April 1, 1884.

Ferguson paid the $50 on the execution of the articles, took part possession of the land in the fall of 1883 and full possession before March 28, 1884 ; paid $1,500 about the last of March or April 1, 1884, and afterwards other sums, leaving him indebted to Wolf on May 10, 1886, on account of the purchase money, in the sum of $1,000.25.

On May 10, 1886, Wolf executed and delivered a deed to Ferguson, who paid him then $200.25 and gave him a judgment for $800, entered that day to No. 74 September Term 1886.

2. On March 28, 1884, W. W. Britton obtained a judgment against Wolf, the vendor, to No. 136 April Term 1884, for $231.65. This was an amicable scire facias to judgment No. 98 December Term 1878, entered October 5, 1878, the lien of which expired October 5, 1883. This revived judgment bound Wolf's legal title in Ferguson's land, represented by the unpaid purchase money, and at the date of the entry of this judgment, $1,500 of the purchase money remained unpaid.

Two other judgments were entered against Wolf whilst he held the legal title, viz. :

Jennie A. McClelland, 255 April Term 1885, April 1, 1885, $3,150.

Samuel C. Hollar, 258 April Term 1885, April 1, 1885, $5,623.

And on April 1, 1885 at least $1,000.25 of the purchase money was unpaid.

3. Judgments were obtained against Wm. H. Ferguson as follows :

| | | | |
|---|---|---|---|
| George Wolf, | 74 Sept. T. 1886, | 10 May, 1886, | $800.00 |
| Stine & Co., | 123 Feb. T. 1887, | 11 Jan., 1887, | 96.98 |
| Catharine Varner, | 49 Sept. T. 1887, | 3 May, 1887, | 246.24 |
| Ellen Ferguson, | 51 Sept. T. 1887, | 3 May, 1887, | 453.80 |
| O. C. Bowers, | 75 Sept. T. 1887, | 6 May, 1887, | 25.00 |

John Smith,          122 Feb. T. 1887,   7 May, 1887, $379.67
George Wolf,          89 Sept. T. 1887, 13 May, 1887,  106.57

4. George Wolf having sold his Amberson valley farm to W. H. Ferguson on August 4, 1883, bought by articles of agreement the McClelland farm in Letterkenny township, in October 1883, for $10,861, and received a deed for the same April 1, 1885, from W. C. and T. A. McClelland, attorneys in fact for the heirs of John and Martha McClelland.

5. Judgments were entered against said George Wolf in the Common Pleas of Franklin county as follows:

W. W. Britton,      136 April T., '84, 28 Mar., '84, $ 231.65
Jennie McClelland, 253 April T., '85,  1 April, '85,  3,150.00
Samuel C. Hollar,  258 April T., '85,  1 April, '85,  5,623.00

But the heirs of John and Martha McClelland were the vendors; Jennie A. McClelland was one of them, as the deed shows; the judgment bond was made and delivered to her and judgment entered thereon on the day the deed was delivered to Wolf, the vendee. The bond says, " it being purchase money for real estate purchased from W. C. and T. A. McClelland, attorneys for the heirs of John and Martha McClelland, deceased." This was therefore a purchase money judgment, and the first lien on the McClelland farm. Britton's judgment was the second lien. Hollar's judgment for $5,623 was next. On April 1, 1886, interest was paid up on the Jennie McClelland judgment and it was assigned to Samuel C. Hollar.

6. Coming to the transactions of May 10, 1886, we see from what has been already ascertained the relation of the parties. Ferguson had as yet no deed; he owed Wolf, his vendor, on purchase money, $1,000.25. Britton's judgment for $231.65 was a lien on Wolf's legal title in the land sold to Ferguson, and was the second lien amply secured on Wolf's farm in Letterkenny. Hollar's judgment for $3,150 was the first lien on Wolf's land in Letterkenny and perfectly safe; his $5,623 judgment was the third lien on that farm and not secured, as subsequent events showed. Both of Hollar's judgments were liens on Wolf's legal title in Ferguson's land, but junior liens in respect of Britton's judgment. The unpaid purchase money on April 1, 1885, was, so far as I can ascertain from the evidence, not more than $1,000.25, that is to say, the same that it was on May 10, 1886. Therefore it behooved Ferguson to see

that $1,000.25 still due to Wolf was applied to the liens on Wolf's legal title. Wolf was entitled to none of it. And Hollar as early as December 30, 1885, wrote to Ferguson: "You will remember I told you not to pay Mr. Wolf any money on the farm purchased of him. I hope you have not, and will not before the 1st of April, and then to meet him and myself in Chambersburg, as the money will all be coming to me and you can only get a good title with my consent."

7. What was done on May 10, 1886, was this: Ferguson, Wolf and Hollar met in Chambersburg. Ferguson paid the $1,000.25 to Wolf, giving him $200.25 in cash and a judgment for $800, and got his deed.

This was his share in the transaction. Wolf, on his part, paid over to Hollar the $200.25 and assigned to him the $800 judgment. Hollar credited Wolf with the sums received. So he says, and I notice that he satisfied the Karper judgment of $500, and that on May 10, 1886, a credit of $737.15 was entered on the $5,623 judgment. Certain it is Hollar paid no money to Wolf, and that he got the whole of the unpaid purchase money representing Wolf's legal title in the Ferguson land.

In this business the Britton judgment of $231.65, which was the first lien on the legal title, was ignored by all. If known to Ferguson and Hollar, it was not in their view at the time. It was Wolf's debt and amply secured on Wolf's own Letterkenny land.

The parties were dealing at arms' length, each taking care of his own interests. Hollar did nothing at the request or for the benefit of Ferguson. His sole object was to reduce Wolf's debt to himself by getting the money due from Ferguson to Wolf. At this point of time matters stand thus:

If Wolf had not assigned the judgment, Ferguson could have defended against it in toto, for all of it was necessary to remove the liens against Wolf's legal title; first Britton's $231.65 and then Hollar's, to the extent of the remainder. Hollar, as assignee, stood in no better case. To his demand for the whole $800 Ferguson might reply, I am entitled to a deduction to the amount of the Britton judgment, the rest is due to you. Take that and reduce by so much the credit you gave Wolf on your judgment against him.

8. Hollar issued execution on the Jennie McClelland judgment against Wolf, and on June 30, 1887, the sheriff sold the McClelland farm to Hollar for $8,400, and made a special return under the act of April 20, 1846, P. L. 411.

Section 214 of the Rules of Court is as follows: Where the purchaser of real estate at a sheriff's sale is a lien creditor and his receipt has been taken, pursuant to the first section of the act of April 20, 1846, the return of sale shall be read in open court on Saturday of the first week of the term. And if the right of the purchaser to the money mentioned in said return be not then questioned or disputed, the sale will be confirmed.

Saturday of the first week of September Term 1887, fell on the 10th day of September.

9. The record does not show that the sheriff's special return of the sale to Hollar was read in open court on September 10, 1887, or indeed at any other time. It is simply found attached to the writ.

On Thursday of the second week of court, 15th, which is the day fixed for acknowledgment of sheriff's deeds, Mr. Stewart filed exceptions on behalf of Wolf to the acknowledgment of the deed, which had no reference to the special return, and on Saturday of the second week, the 17th, Mr. Bowers, for Blair, filed exceptions to Hollar's right to the money mentioned in his receipt to the sheriff. On October 25, 1887, all the exceptions having been withdrawn, the sale to Hollar was confirmed by the court.

Now, what is remarkable is, that the sheriff in his special return did not merely state the fact that he had received the receipt of Hollar for so much and attach a list of liens upon the property sold, which is all the statute requires, but his return is, " And I further return that the said Samuel C. Hollar, the above named purchaser, is a lien creditor of the said George Wolf, defendant, and as such is entitled to receive the sum of $8,158.77 of the proceeds of said sale, which is the whole amount of the proceeds of said sale less costs, and I have received the receipt of the said Samuel C. Hollar for the said sum of $8,158.77, a copy of which appears below, and I have also attached a list of the liens on said real estate as certified to by the prothonotary."

And the list appended shows the liens thus: W. W. Britton,

March 28, 1886, $231.65; Jennie A. McClelland, April 1, 1885, $3,150; Samuel C. Hollar, April 1, 1885, $5,623, and others.

Now, it was the duty of the sheriff to take the receipt of Hollar for the amount which he appeared by the record to be entitled to receive. Not only did he not do that, but he stated to the court that Hollar was entitled to receive the whole amount of the proceeds less costs, in the face of certified list of liens; and if the return ever was read in open court I am sure this misleading statement was not corrected by a reference to the list of liens appended, for in that case Britton and Ferguson, persons interested, would have been protected. The court would not have confirmed the sale without knowing why the amount of the Britton judgment which appeared to be the first lien, had not been paid to the sheriff. This return which Mr. Hollar procured to be made, unfair toward the sheriff and misleading the court, is the origin of the trouble in this distribution.

Is not Britton in a position to demand from the sheriff the amount of his judgment, as if no special return had been made? The record does not show that it was made in proper form, that is in open court, on the day fixed by the order of court, and the court would be slow to allow an amendment of the record or receive testimony to that end.

Britton cannot be prejudiced by the act of the court in confirming the sale, without some neglect or default on his part. Actus curiæ neminem gravabit: Broom's Leg. Max., 94. And in Bain v. Lyle, 68 Pa. 60, it is said with reference to stay of executions, "Actus legis nemini facit injuriam. The execution creditor cannot lose his lien or priority without some neglect or default on his part, without at least having a full remedy against the sheriff and on his official bond." I take it that Britton and Ferguson stand as if no special return had been made; that is, with money in the sheriff's hands derived from the land of Wolf, who is Britton's debtor, sufficient to pay Britton's claim in full. And this money is in fact in Hollar's hands.

10. It is a fact, if it is in any way material, that W. W. Britton knew as early as November, 1883, of the sale by Wolf to Ferguson and of the purchase by Wolf of the McClelland farm. He knew also of the sheriff's sale of Wolf's land to

Hollar at the time of the sale. It is also a fact that Britton's judgment was revived against Wolf without notice to Ferguson, who had bought from Wolf and was then in possession of the land. But it does not appear that Wolf owned the Ferguson tract on October 5, 1878, and even if it ever was a lien on it, the lien expired October 5, 1883. So that Britton's judgment stands simply as a new lien against Wolf alone, binding only his legal title in the Ferguson land. Finally, Ferguson, who was produced as a witness, does not seem to have appeared in the cause on his own behalf, either personally or by attorney.

Now, upon the facts as I have ascertained and stated them thus at length and with as much accuracy as possible, several questions contended about in the argument, are seen to be of no difficulty. Ferguson's land was sold on Wolf's purchase money judgment, obtained when the deed was delivered to Ferguson, and so the whole legal and equitable title passed by the sale ; the judgments on the legal title only, as well as all others, were divested, and consequently are entitled to participate in the fund: Commonwealth v. Alexander, 14 S. & R. 257. Britton's judgment bound as well Wolf's legal title in Ferguson's land as Wolf's McClelland farm; but Wolf was Britton's debtor, and Ferguson had paid Wolf the whole purchase money for his land, so that in equity Britton was bound to look to Wolf in the first instance: Martin's App., 97 Pa. 90; Commonwealth v. Alexander, 14 S. & R. 263; Lowry v. McKinney, 68 Pa. 295. It is true that if Wolf's land had not been sold, Britton could have come in on the Ferguson fund, for equity will not realize another fund or delay a lien creditor. But here Wolf's land was sold on June 30, 1887, for a great deal more than enough to pay Britton's judgment, and at September Term the sheriff, according to the command of his writ, had these moneys before the court to render to Britton; and not until October 22, 1887, did the sheriff sell the Ferguson land. That fund, in contemplation of law, is in the sheriff's hands now, and Britton entitled to demand it from him. Is not Britton's judgment then to be treated as paid, since it ought to be paid out of Wolf's land, and there is money in the hands of the sheriff derived from Wolf's land wherewith to pay it? And the judgment creditors of Ferguson may show pay-

ment of the prior incumbrance: Borland's App., 66 Pa. 472; Meckley's App., 102 Pa. 542. It is enough to show that in equity and good conscience it is satisfied, for by the words of the statute the court is to distribute the fund "according to law and equity:" Landell's App., 105 Pa. 152; Selden's App., 74 Pa. 328. But the doctrine of marshaling assets is applicable here, and may be invoked by the lien creditors of Ferguson, being no more than their right to compel Britton to seek payment from Wolf, founded upon an equity giving Ferguson the right for his own sake to compel Britton to seek payment from Wolf: Ebenhardt's App., 8 W. & S. 332.

"The doctrine of marshaling grows out of the principle that a party having two funds to satisfy his demand shall not, by his election, disappoint a party who has only one fund. . . . . When both funds are in court or under its immediate control, the rights of every one can be protected, and there is no harm in throwing the paramount creditor at once on the singly charged fund:" Bispham's Equity, 4th ed., 403. So in Neff's App., 9 W. & S. 42, where Neff was surety for the Millers, whose land was therefore primarily liable, and the contention was that equity and justice required that Mrs. Wilcox should be compelled to look to the property of the Millers, the real debtors, for payment, the court says "the argument of the appellants would be irresistible, perhaps, if the real estate of the Millers had been converted into money and brought into court for appropriation as Isaac Neff's was."

Now Britton holds a judgment which binds Wolf's legal title in Ferguson's land and at the same time Wolf's own land. Wolf is the real debtor, and Ferguson's land sustains the relation of surety for Wolf: Lowry v. McKinney, 68 Pa. 295. Wolf's land is sold by the sheriff and the proceeds are more than enough to pay Britton. At this stage Ferguson's land is sold, and the proceeds brought in for distribution. Ferguson may throw Britton over on the Wolf fund, which is the one in equity primarily liable: Lloyd v. Galbraith, 32 Pa. 103. And if Britton is paid out of the Ferguson fund, the latter's creditors are entitled to be subrogated to the right of Britton in the Wolf fund: Horning's App., 90 Pa. 391; Lloyd v. Galbraith, supra; Neff's Appeal, supra.

Now the auditor's report pays Britton out of the Ferguson

fund, and deducts the amount from Hollar's judgment, which is simply subrogating Ferguson's judgment creditors to Britton's right against the Wolf fund; the amount of Britton's judgment in that fund being in Hollar's hands, and having been wrongfully diverted must be restored. Both funds being in the control of the court, and all parties in interest being before the court, all the equities can be adjusted and the whole matter be made an end of: 2 L. C. in Eq., 3d Am. ed., 280; Tindle's App., 77 Pa. 201.

I am of opinion therefore that the auditor's report must be confirmed. But I have been compelled to find many facts not embraced in the auditor's findings, in view of the course of the argument in court, and in order to a satisfactory consideration of all the questions raised, and I ought not to finally determine the cause upon this apparent state of facts, without giving Mr. Hollar's counsel an opportunity to explain or rebut them.

In order that they may move for a re-argument or a reference back to the auditor, it is ordered, that the exceptions be dismissed and the auditor's report confirmed, and that distribution be made accordingly. But this order and decree not to be entered or take effect for fourteen days from this date, and if within that time a motion be filed, the cause to be placed on the current argument list.

Without having made any motion for a re-argument or for a reference back to the auditor, the exceptant took this appeal, filing the following assignments of error:

1. The court erred in confirming the report of the auditor.

2. The court erred in awarding to W. W. Britton, guardian, the sum of $286.22, and in not awarding to Samuel C. Hollar the full amount of his judgment debt, interest and costs.

3. The court erred in going outside of the report of the auditor and outside of the testimony, and in making up a report without legal testimony.

*Mr. W. Rush Gillan* (with him *Mr. W. U. Brewer*), for the appellant:

1. The lines of this appellant seem to have fallen in hard places. On May 10, 1886, he paid George W. Wolf $800 for an assignment of a judgment held by Wolf against Ferguson,

given in part payment of purchase money of real estate, the deed for which was delivered that day. Ferguson was present at the time and requested Hollar to take this judgment and invest his money in it. Hollar so swears, and this is nowhere denied. Yet the auditor finds as a fact that Hollar sought and wanted the assignment of the judgment, and took it independent of anything Ferguson did or said.

2. Britton's judgment had lost its lien, and its revival, after Ferguson, with Britton's full knowledge, had purchased Wolf's farm and gone into possession, was without notice to Ferguson. Hollar's judgment was the first lien, and Ferguson makes no objection to its payment. Yet the auditor deducts from it the amount of the Britton judgment, and awards Britton payment of his judgment out of Hollar's money. At the time Ferguson gave the judgment assigned to Hollar, neither Ferguson nor Hollar knew of the Britton judgment. The auditor is in error in intimating in his eighth finding of fact, that Hollar did know of this judgment.

3. The conclusions of law of the learned court below may not be open to criticism except in one or two instances. He concedes that the report of the auditor cannot be sustained on the facts as presented by him, and then proceeds to find fact after fact not warranted by the testimony, indeed wholly without testimony. There is not a word of testimony in regard to the deed for the McClelland farm mentioned in the fourth finding of fact by the court, and in the fifth finding the contents of a judgment bond never before the auditor are recited by the court. The finding, under the seventh head, that Hollar did nothing at the request or for the benefit of Ferguson, is contrary to the only evidence on the subject.

4. The special return recited in the ninth finding was not in evidence, and the court will look in vain for any evidence respecting the exceptions to the acknowledgment of the sheriff's deed referred to in said finding. Nor is there any evidence that Hollar procured that special return to be made, as the court says he did. The finding that Britton cannot be prejudiced by the confirmation of the sale, without some neglect or default on his part, ignores the fact, found by the court, that he was aware of the sale. The court went outside the testimony, built up for Britton a theory which had never occurred

to his counsel, undertook in this way to bring in for distribution a new fund not before the court, and allowed Britton his money at the expense of Hollar.

5. This action of the court amounts to depriving a man of his property without a hearing. It is true, the decree was withheld for fourteen days to give Hollar an opportunity to have the matter referred back to the auditor or re-argued. But we insist that in this the learned court misconceived his duty. It was his business to pass upon what was before him, and nothing else. Whether Britton was entitled to his money, either from the sheriff or from Hollar, was not a matter before either the auditor or the court below, and is not now before this court. The court having shown an evident anxiety to make an unwarranted finding and decree, we have brought this appeal without moving for a re-argument or a reference back to the auditor.

*Mr. O. C. Bowers* (with him *Mr. Alexander Stewart*), for the appellee:

1. Britton's judgment was a lien on the land sold by Wolf to Ferguson to the extent of the purchase money remaining unpaid at the date of its entry. It was also the second lien on the McClelland farm, the first and third liens thereon being held, at the time of the sheriff's sale thereof, by Hollar. The fund raised by that sale being more than sufficient to pay Britton's judgment in full, that judgment was paid in law, so far as Ferguson or his lien creditors were concerned. Wolf was the principal debtor, and the land conveyed by him to Ferguson was, to the extent of the unpaid purchase money, surety for the debt: Paxton v. Harrier, 11 Pa. 312; Lowry v. McKinney, 68 Pa. 295; Martin's App., 97 Pa. 90.

2. Britton was therefore bound to see to the distribution of the fund, and, if he permitted it to be misapplied, cannot now look to the surety for the debt: Paxton v. Harrier, 11 Pa. 312; Holt v. Bodey, 18 Pa. 207; Commonwealth v. Vanderslice, 8 S. & R. 452; Commonwealth v. Haas, 16 S. & R. 252; Ramsey v. Bank, 2 P. & W. 203; Richards v. Commonwealth, 40 Pa. 146. If Ferguson were compelled to pay the Britton judgment, he could offset the amount paid against the $800 purchase money judgment which Wolf held against him, for the

payment would be made to clear the title of the land conveyed to him by Wolf; and Hollar, as the holder of this purchase money judgment, is in no better position than Wolf, for he knew it was a purchase money judgment; it was assigned to him at his request, and he gave nothing for it but a credit upon another judgment against Wolf, subsequent in lien to the Britton judgment.

3. Hollar is in no worse position by reason of the deduction of the amount of the Britton judgment from his judgment against Ferguson, than he would be if he had not taken up the latter judgment; for in that event the same deduction would have been made from his judgment against Wolf. Ferguson's subsequent lien creditors may assert his rights for their protection. Moreover, there is another, and if possible a stronger reason for making the deduction. In consequence of the false special return of the sale of Wolf's land to Hollar, the latter received the whole proceeds of sale, to the exclusion of prior lien creditors; and he thus has in his hands to-day, as the amount of the Britton judgment, money which belongs to W. W. Britton, guardian.

4. That Hollar has this money in his hands improperly, there is no dispute. The sole contention of his counsel is that it cannot be deducted from his judgment and awarded to Britton in this proceeding. But the action of the auditor and court is fully sustained by Tindle's App., 77 Pa. 201. We submit the case, without further argument, upon the able opinion of the court below and the authorities therein cited. In view of the unfounded statements and unjust insinuations of the appellant's counsel, we call attention to the concluding remarks of Chief Justice LEWIS in Allegheny v. Nelson, 25 Pa. 335. The court below found no fact unwarranted by the evidence, and showed no anxiety other than " to do true judgment and justice between man and man."

PER CURIAM:

This case has been so elaborately argued by the auditor and the court below, that we do not find it necessary to continue the discussion at length. The reasons given by the learned judge for awarding the sum of $286.22 to W. W. Britton, guardian, are entirely satisfactory. This disposes of the second assignment of error.

We desire to say in regard to the first, that it is exceedingly vague and unsatisfactory.   To allege in general terms that "the court erred in confirming the report of the auditor," is to give us no information whatever.   In what respect, or for what reason did it err?   The remaining assignment, the third, is equally vague.   It is, that "the court erred in going outside of the report of the auditor and outside of the testimony, and in making up a report without legal testimony."   What fact did the court find outside of the testimony, or without testimony?   This should have been stated to give the assignment any point. That the court below found some facts not found by the auditor appears from the opinion of the learned judge when he says: "I am of opinion therefore that the auditor's report must be confirmed.   But I have been compelled to find many facts not embraced in the auditor's findings, in view of the course of the argument in court, and in order to a satisfactory consideration of all the questions raised, and I ought not to finally determine the cause upon this apparent state of facts, without giving Mr. Hollar's counsel an opportunity to explain or rebut them.   In order that they may move for a re-argument or a reference back to the auditor, it is ordered that the exceptions be dismissed and the auditor's report confirmed, and that distribution be made accordingly.   But this order and decree not to be entered or take effect for fourteen days from this date, and if within that time a motion be filed, the cause to be placed on the current argument list."   The learned judge had the right to go outside of the auditor's report; he was not shut up within its four corners, and there is nothing to show that he went outside of the evidence.   His opinion does not say so, and if he found any fact without evidence, it should have been distinctly stated in the assignment of error.   And, however the case may be, there was an opportunity afforded by the learned judge to correct any of his findings by a reference back to an auditor, or by a re-argument before the court.   The appellant did not see proper to avail himself of this right, but brought the case directly here by appeal.   As no objection to the findings of the court was made below, where it might and should have been made, we can attach but little weight to it here.

The decree is affirmed and the appeal dismissed at the costs of the appellant.